IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WILLIAM THOMAS BROWN )
)
v. ) NO. 3-10-1146
) JUDGE CAMPBELL
CITY OF FRANKLIN, et al. )

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 45). For the reasons stated herein, Defendants' Motion is GRANTED in part and DENIED in part as follows.

FACTS

This action is brought pursuant to 42 U.S.C. § 1983 for the alleged violation of Plaintiff's constitutional rights. Plaintiff's Amended Complaint (Docket No. 35) alleges that, on December 10, 2009, Plaintiff flew to Nashville, Tennessee, from Florida, arriving about 2:00 p.m. Plaintiff alleges that, about 10:35 p.m. on that same day, Defendant Lindsey of the City of Franklin Police Department falsely arrested and charged Plaintiff with two counts of attempted aggravated burglary, in violation of Plaintiff's Fourth Amendment rights.

Plaintiff also contends that, the following morning, Defendants charged Plaintiff with failure to register with Tennessee's Sexual Offender Registry ("SOR") and required that he register with the SOR in order to be released on bond, in violation of his Fourteenth Amendment rights to due process and to privacy. Plaintiff further asserts that, after he was arrested, Defendants Smith and

1

Johnson continued to question him despite his assertion of his right to counsel, in violation of his Fifth Amendment rights.

Plaintiff claims that Defendant Johnson, again in violation of Plaintiff's right to counsel, threatened Plaintiff with indefinite incarceration, even if he posted the required bond, until Plaintiff signed an SOR registration form, in violation of his Eighth Amendment right to be free from excessive bail and/or unconstitutional conditions of confinement. Plaintiff also alleges that Defendants unlawfully required him to submit a DNA sample, in violation of his Fourth Amendment rights.

Plaintiff argues that Defendant City of Franklin failed adequately to train and supervise its officers, resulting in the violation of Plaintiff's constitutional rights. Finally, Plaintiff contends that Defendants' conduct constitutes a violation of state law under the Tennessee Governmental Tort Liability Act ("TGTLA").

Defendants have moved to dismiss all of Plaintiff's claims except his Fourth Amendment claim for false arrest. The parties represent that Plaintiff is still awaiting his criminal trial on the attempted aggravated burglary charges.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

## SECTION 1983

To prove a Section 1983 claim, Plaintiff must establish that: (1) he was deprived of a right secured by the United States Constitution or laws; and (2) the deprivation was caused by a person acting under color of state law. *Spurlock v. Whitley*, 971 F.Supp. 1166, 1175 (M.D. Tenn. 1997). Here, the parties do not dispute that Defendants were, at all relevant times, acting under color of state law. Defendants contend, however, that Plaintiff cannot prove that he suffered any deprivation of constitutional rights.[1]

The individual Defendants alternatively claim that they are entitled to qualified immunity from Plaintiff's claims. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009). Although Defendants bear the burden of pleading this defense, Plaintiff must show that Defendants are not entitled to qualified immunity. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011).

---

[1] As noted above, Defendants are not challenging Plaintiff's Fourth Amendment claim for false arrest at this time.

Determinations of qualified immunity require the Court to answer two questions: (1) whether the officer violated a constitutional right, and (2) whether that right was clearly established in light of the specific context of the case. *Hayden*, 640 F.3d at 153. "The judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818. The Court will address the qualified immunity defense in relation to Plaintiff's specific claims below.

(1) Fourth Amendment:  DNA Sample

The Fourth Amendment protects citizens against unreasonable searches and seizures. Plaintiff claims that Defendants violated his Fourth Amendment rights by compelling him to give a DNA sample. Defendants contend that Plaintiff's DNA was properly collected pursuant to Tennessee law, which provides:

> When a person is arrested on or after January 1, 2008, for the commission of a violent felony as defined in subdivision (e)(3), the person shall have a biological specimen taken for the purposes of DNA analysis to determine identification characteristics specific to the person as defined in subsection (a).  After a determination by a magistrate or a grand jury that probable cause exists for the arrest, but prior to the person's release from custody, the arresting authority shall take the sample using a buccal swab collection kit for DNA testing.

Tenn. Code Ann. § 40-35-321(e)(1).[2] "Violent felony," as defined in subsection (e)(3), includes attempted aggravated burglary, the crime for which Plaintiff was arrested.  Tenn. Code Ann. § 40-35-321(e)(3)(F) and (L).  The law provides that if the charge for which the sample was taken is

---

[2]  Federal law includes a similar provision which states that the Attorney General may collect DNA samples from individuals who are arrested, facing charges, or convicted.  42 U.S.C. § 14135a(a)(1)(A).

4

dismissed or the defendant is acquitted at trial, the government shall destroy the DNA sample and all records of the sample unless there is a pending arrest or felony conviction which would require that the sample remain in the data bank. Tenn. Code Ann. § 40-35-321(e)(2).

The Tennessee Supreme Court has held that the collection of DNA evidence and subsequent analysis thereof are searches entitled to Fourth Amendment protection and that such searches of incarcerated felons undertaken pursuant to Tennessee's DNA collection statute pass constitutional muster when they are reasonable under all of the circumstances. *State v. Scarborough*, 201 S.W.3d 607, 618 (Tenn. 2006). Similarly, the Sixth Circuit Court of Appeals has upheld DNA collection from convicted felons. *Wilson v. Collins*, 517 F.3d 421 (6th Cir. 2008); *United States v. Conley*, 453 F.3d 674 (6th Cir. 2006).

Plaintiff was not a convicted felon, however. The statute under which the DNA sample was taken from Plaintiff applies to persons who are *arrested*, not convicted, for violent felonies. Neither the Tennessee Supreme Court, the Sixth Circuit nor the U.S. Supreme Court has ruled on the constitutionality of this provision of Tennessee's law concerning DNA sampling from arrestees.[3]

The Ninth Circuit Court of Appeals has upheld the federal statute concerning DNA samples from arrestees, 42 U.S.C. § 14134a(a)(1)(A), finding that where a court has found probable cause to believe that the defendant committed a felony, the government's interest in definitively determining the defendant's identity outweighs the defendant's privacy interest in giving a DNA sample where, as in that case, the government's use of the DNA is limited to identification purposes and there is no indication that the government intends to use the information for any other purpose.

---

[3] The Tennessee Attorney General has opined twice that this legislation, related to taking DNA samples from arrestees, is "constitutionally suspect." 06 Op. Att'y Gen. 070 (2006) and 07 Op. Att'y Gen. 045 (2007).

*United States v. Pool*, 621 F.3d 1213, 1214 (9th Cir. 2010), *en banc* rehearing granted, 2011 WL 2151202 (9th Cir. June 2, 2011).

Reviewing the search under a totality of the circumstances test, the *Pool* court noted that the use of DNA collected under the federal statute is limited to individual identification. *Pool*, 621 F.3d at 1220. The statute imposes criminal and financial penalties for improper use of DNA samples and limits access to DNA materials. *Id*. As with the Tennessee statute, there are also provisions for the expungement of DNA information if the defendant is acquitted or the felony charges are dismissed. *Id*.

To Mr. Pool's concerns about the government's potential use of the DNA, the court, citing its earlier opinion in *United States v. Kincade*, 379 F.3d 813, 837-38 (9th Cir. 2004), noted:

> But beyond the fact that the DNA test itself provides protections against such misuse, our job is limited to resolving the constitutionality of the program before us, as it is designed and as it has been implemented. In our system of government, courts base decisions not on dramatic Hollywood fantasies, . . . but on concretely particularized facts developed in the cauldron of the adversary process and reduced to an assessable record. If, . . . and when, some future program permits the parade of horribles the DNA Act's opponents fear - unregulated disclosure of [DNA index system] profiles to private parties, genetic discrimination, state-sponsored eugenics, . . .we have every confidence that courts will respond appropriately.

*Pool*, 621 F.3d at 1221-22. "As currently structured and implemented, however, the DNA Act's compulsory profiling of qualified federal offenders can only be described as minimally invasive - both in terms of the bodily intrusion it occasions, and the information it lawfully produces." *Id*. at 1222.

In *United States v. Thomas*, 2011 WL 1599641 (W.D. N.Y. Feb. 14, 2011), the Magistrate Judge, whose opinion was adopted and approved by the district court, [4] found that the federal DNA

---

[4] *United States v. Thomas*, 2011 WL 162732 (W.D. N.Y. April 27, 2011).

6

statute was constitutional under the Fourth Amendment as applied to the defendant, an indicted but not convicted person. *Id*. at * 10. Citing a Second Circuit decision, *United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007), the *Thomas* court stated that the primary purpose of the DNA Act is to create a DNA identification index to assist in solving crimes. *Thomas* at * 6.[5] Thus, the court found that the only privacy interest implicated by the DNA Act is identity. *Id*. at * 9. The *Thomas* court concluded that the government's interest in accurate and rapid identifications outweighed the defendant's privacy interest in the collection and analysis of the DNA sample. *Id*. at * 10.[6]

On the other hand, a U.S. District Court in Pennsylvania has held that the federal statute regarding taking DNA samples from arrestees is unconstitutional. *United States v. Mitchell*, 681 F.Supp. 2d 597, 610 (W.D. Pa. 2009).[7] The *Mitchell* court found that the warrantless, suspicionless pretrial collection of DNA is a violation of the Fourth Amendment's protection of an individual's right to be free from unreasonable searches and seizures. *Id*. at 602.

The *Mitchell* court focused on the analysis of the DNA sample rather than the taking and found that the only reasonable use of DNA is for investigations, not for identifications, thus

---

[5] The court noted that the purpose of collecting DNA samples is to obtain identifying information, not to uncover evidence of wrongdoing or solve a particular crime. *Thomas* at * 6.

[6] In the context of a preliminary injunction motion, the court in *Haskell v. Brown*, 677 F.Supp.2d 1187 (N.D. Cal. 2009) held that defendant arrestees did not have a substantial likelihood of success on the merits of their claim that California's DNA statute, which required warrantless seizure of DNA from persons arrested for felonies, violated the Fourth Amendment. The *Haskell* court noted that, under California law, the sample can only be tested to reveal an individual's identity. *Id*. at 1190. The California law also provides for expungement of a sample where no charges are filed, the case is dismissed or the arrestee is found not guilty. *Id*. at 1191.

[7] Mr. Mitchell had been indicted, but not convicted, for a federal drug offense. *Mitchell*, 681 F. Supp.2d at 599.

disagreeing with the Ninth Circuit, New York and California courts cited above.[8] "The identification issue in this instance is a red herring, as there is no compelling reason to require a DNA sample in order to 'identify' an arrestee." *Id.* at 609.

Rebuffing the government's arguments that the statute included protections, such as limited use of the DNA and criminal penalties for violations thereof, the *Mitchell* court stated: "Whether the structure and built-in protections will alleviate the potential for widespread abuse of the private information derived from DNA is of no moment to the determination of the reasonableness of a warrantless search. No amount of statutory protection of the sample or the information contained therein will undo the taint of an unconstitutional search to obtain such information." *Mitchell,* 681 F.Supp.2d at 610.

Plaintiff does not address the constitutionality of this statute and, instead, argues that Defendants' Motion is premature. Plaintiff submits that the DNA collection statute presumes a legal and valid arrest, which he is contesting. The statute does not require a "valid" arrest, however. It simply states that the DNA sample shall be taken when a person is *arrested* for commission of a violent felony.

Without deciding the constitutionality of the Tennessee statute, the Court finds that the individual Defendants are entitled to qualified immunity from this claim. In this case, it is appropriate to consider the second qualified immunity factor first; that is, whether the allegedly violated constitutional right was clearly established. *See Pearson*, 129 S.Ct. at 818. Whether or not Defendants violated a constitutional right of the Plaintiff in taking his DNA sample, and whether

---

[8] "A DNA profile generates investigatory evidence that is primarily used by law enforcement officials for general law enforcement purposes." *Mitchell*, 681 F.Supp.2d at 605. "The purpose of collecting his DNA is solely for criminal investigative purposes." *Id*. at 610.

or not the Tennessee statute is constitutional, the right which Plaintiff alleges was violated was not clearly established at the time of his arrest. Defendants acted pursuant to a statute that has never been declared invalid or unconstitutional. Defendants have a duty to uphold the law, including the statute under which they took the DNA sample, and the Court finds no clearly established obligation to disobey that law.

Moreover, as indicated by the above discussion, the courts are not in agreement about the constitutionality of taking DNA samples from arrestees and no court has ruled on the constitutionality of the Tennessee law. These divergent opinions are further indication that reasonable officers in Defendants' positions would not believe that following the Tennessee statute would violate Plaintiff's Fourth Amendment rights.

Accordingly, the Court finds that the individual Defendants are entitled to qualified immunity from Plaintiff's Fourth Amendment claim related to the DNA sample, and that claim against the individual Defendants is DISMISSED.

(2) Fourteenth Amendment: Sex Offender Registry

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to privacy by requiring him to register with the Tennessee Sex Offender Registry, resulting in his photograph and likeness being published on Tennessee's Sexual Offender Website. Plaintiff argues that he was not required to be placed on the SOR because, as alleged in his Amended Complaint, he was not required to register in Florida, where he was convicted and sentenced, given the date of his prior conviction.

Defendants contend that, given his Florida conviction, Plaintiff was required to register and violated the SOR requirement to register within 48 hours of establishing or changing a primary or

9

secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation, or becoming a student in Tennessee. Tenn. Code Ann. § 40-39-203(a)(1).

If Plaintiff's Florida conviction did not qualify as a "conviction" under Tenn. Code Ann. § 40-39-202(2), then requiring Plaintiff to register with the SOR and have his information published could be a violation of his right to privacy. Accepting the allegations of Plaintiff's Amended Complaint as true, and without additional facts more appropriate for summary judgment, the Court cannot determine this issue at this stage of the litigation. In addition, Plaintiff raises factual issues concerning whether he meets the 48-hour and other requirements of Tenn. Code Ann. § 40-39-203(a)(1).

These factual issues also preclude qualified immunity as to this claim. Whether Plaintiff's Florida conviction required that he register in Tennessee, whether Defendant met the 48-hour and other requirements of the law, and whether Defendants knew or should have known these things are factual issues which must be decided on a more complete record.

(3) Fifth Amendment: Right to Counsel

Plaintiff contends that Defendants violated his Fifth Amendment rights by continuing to question him after he invoked his right to counsel. The Fifth Amendment protects a person from self-incrimination and has been interpreted to require police to give "Miranda warnings"[9] and to require suspects to voluntarily waive their rights to counsel before custodial interrogation may proceed.

Mere coercion does not violate the Self-Incrimination Clause, however, absent use of the compelled statements in a criminal case. *Chavez v. Martinez*, 123 S.Ct. 1994, 2002 (2003). It is

---

[9] *Miranda v. Arizona*, 86 S.Ct. 1602 (1966).

only once compelled incriminating statements are used in a criminal proceeding that an accused has suffered the requisite constitutional injury for purposes of a Section 1983 action. *McKinley v. City of Mansfield*, 404 F.3d 418, 430 (6th Cir. 2005); *Lingler v. Fechko*, 312 F.3d 237, 239 (6th Cir. 2002) ("By its terms, the Fifth Amendment does not prohibit the act of compelling a self-incriminating statement other than for use in a criminal case.").

Because no allegedly coercive statements have been used against the Plaintiff in a criminal proceeding, Defendants argue this claim should be dismissed. Plaintiff, on the other hand, asserts that, for the same reason, Defendant's Motion is premature and the Court should delay any ruling on this issue until his criminal proceeding is ended.

Plaintiff has not been injured by the use of any statements allegedly made in violation of the Fifth Amendment. Thus, there is no constitutional injury. Defendants' Motion to Dismiss this Fifth Amendment claim is granted, and Plaintiff's Fifth Amendment claim is DISMISSED.[10]

(4) Eighth Amendment: Excessive Bail/Conditions of Confinement

Plaintiff's Amended Complaint alleges that Defendants threatened Plaintiff with indefinite incarceration if he did not register with the SOR, which Plaintiff claims amounts to a violation of his rights against excessive bail and unlawful conditions of confinement under the Eighth Amendment.[11]

Defendants argue that the Eighth Amendment's prohibition of unlawful conditions of confinement is inapplicable to this case, since Plaintiff does not complain of a condition of

---

[10] Nothing herein prevents Plaintiff from raising his Fifth Amendment claim at his criminal trial or at a later time.

[11] The Eighth Amendment's protections apply to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 99 S.Ct. 1861, 1873, n. 16 (1979).

confinement such as adequate food, clothing, shelter, medical care or safety. Plaintiff contends, however, that the threat of indefinite incarceration and the placement of false charges against the Plaintiff by Defendants directly affected the amount of Plaintiff's bail, resulting in unlawful "excessive bail."

Plaintiff has not alleged facts, however, to show that his bail was denied, the amount was excessive, or he was unable to post the bond. He has not alleged that Defendants, rather than the appropriate authority, actually set his bail. He has not alleged that his bail was greater than necessary to achieve the purposes for which bail is imposed. Plaintiff's allegations have to do with threats, not excessive bail.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claim for excessive bail is granted, and that claim is DISMISSED.

(5) Municipality Liability

Plaintiff has named the City of Franklin as a Defendant in this case, alleging that the City is directly liable for the Plaintiff's damages because of certain policies, practices and customs of the Franklin Police Department which were the underlying causes of Plaintiff's injuries. Docket No. 35, ¶ 37. Plaintiff contends that those alleged policies, practices and customs involve the failure to adequately and properly train, educate, monitor and evaluate the City's officers.

To establish municipal liability under Section 1983, a plaintiff must establish that the plaintiff's harm was caused by a constitutional violation and that a policy of custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac County,* 606 F.3d 240, 255 (6th Cir. 2010); *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities are liable for harms resulting from a constitutional violation only when the

injury resulted from an implementation of the municipality's official policies or established customs. *Id.*[12]

The plaintiff must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the "moving force" behind the violation. *Spears*, 589 F.3d at 256.

Defendants argue first that there has been no constitutional violation. Defendants have not moved to dismiss Plaintiff's false arrest claim, however, and the Court has not dismissed all of Plaintiff's other constitutional claims. Thus, the Court must determine whether Plaintiff has adequately pled that a policy, practice or custom of the City of Franklin was the moving force behind the alleged violations of his Fourth and Fourteenth Amendment rights.

Plaintiff contends that the City is liable for failure adequately to train, supervise and discipline its officers. A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability. *Miller*, 606 F.3d at 255. The inadequacy of police training serves as a basis for Section 1983 liability, however, only where the failure to train amounts to "deliberate indifference" to the rights of person with whom the police come into contact. *Id.* To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. *Id.*

---

[12] There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations. *Spears*, 589 F.3d at 256.

Plaintiff has not alleged a history of unconstitutional conduct of which the City of Franklin was clearly on notice or shown that the need for more or different training was so obvious as to constitute deliberate indifference on the part of the City. Even if Plaintiff's Fourth and/or Fourteenth Amendment rights were violated, which the Court has not found, there are insufficient plausible factual allegations to support a claim for municipal liability in this case.

Therefore, Defendants' Motion to Dismiss the claims against Defendant City of Franklin is granted, and Plaintiff's federal claims against the City are DISMISSED.

## STATE LAW CLAIMS

Plaintiff's Amended Complaints alleges that Defendants committed the state law torts of false arrest, false imprisonment, conspiracy, negligence,[13] negligent infliction of emotional distress and intentional infliction of emotional distress/outrageous conduct.

The Tennessee Governmental Tort Liability Act ("TGTLA") provides that governmental entities are not immune from suit for injury proximately caused by a negligent act of omission of any employee within the scope of his employment except if the injury arises out of, among other things, civil rights.[14] Tenn. Code Ann. § 29-20-205(b). Here, even if the Defendants were negligent, all the alleged misconduct arises out of Plaintiff's civil rights and Defendants' alleged violation thereof. The Court finds that the exception for injuries arising out of civil rights applies, and Plaintiff's state law claims against the City of Franklin are DISMISSED.

---

[13] Because Plaintiff alleges that the Defendants intentionally violated his constitutional rights and mere negligence is not enough to constitute a Section 1983 claim, Plaintiff's negligence claims must be alternative claims.

[14] "Civil rights" has been construed to include claims arising under the federal civil rights laws and the U.S. Constitution. *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010).

Under the TGTLA, if the governmental entity is not amenable to suit - - in other words, if immunity has not been removed by § 29-20-205(b) - - then employees of the entity are proper party Defendants.[15] Tenn. Code Ann. § 29-20-310(c). At this point, the Court finds that Plaintiff has sufficiently stated alternative causes of action against the individual Defendants under state law for which the TGTLA does not provide immunity.

Defendants argue that this Court does not have jurisdiction over Plaintiff's TGTLA claims because exclusive jurisdiction lies with the state circuit court pursuant to Tennessee law.[16] Alternatively, Defendants ask the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

The district court's exercise of supplemental jurisdiction is discretionary. *Birgs v.City of Memphis*, 686 F.Supp.2d 776, 778 (W.D. Tenn. 2010). One circumstance in which a court may decline to exercise its supplemental jurisdiction is where an "exceptional circumstance" exists. *Id*. The Sixth Circuit has held that the TGTLA's preference for state circuit courts may serve as an exceptional circumstance permitting a court to decline to exercise its jurisdiction. *Id*. Nevertheless, where invoking the exceptional circumstance objection would necessitate duplicative litigation which would be wasteful of judicial and litigant resources, federal courts have declined to dismiss TGTLA claims. *Id*.; *Lopez v. Metropolitan Gov't of Nashville and Davidson County*, 646 F.Supp.2d 891, 921 (M.D. Tenn. 2009).

---

[15] The "civil rights" exception in § 29-20-205(b) applies to governmental entities, not employees. *Fann v. City of Fairview*, 905 S.W.2d 167, 174 (Tenn. Ct. App. 1994).

[16] Tennessee law provides that the circuit courts shall have exclusive jurisdiction over any action brought under the TGTLA. Tenn. Code Ann. § 29-20-307.

Here, the Plaintiff's state law claims, as indicated above, arise from the same nucleus of facts surrounding Defendants' alleged violation of Plaintiff's civil rights. To decline supplemental jurisdiction would be wasteful and duplicative. The Court, in its discretion, therefore denies Defendants' Motion to Dismiss the state law claims.

## CONCLUSION

For all these reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Plaintiff's federal and state law claims against the City of Franklin are DISMISSED. Plaintiff's claims against the individual Defendants for violation of the Fourth Amendment by taking a DNA sample, for violation of the Fifth Amendment, and for violation of the Eighth Amendment are DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE